UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STABILITY SOLUTIONS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>MEDACTA USA, INC.,<br><br>    Defendant. | Case No. 3:23-cv-00072<br><br>Magistrate Judge Alistair E. Newbern |

# MEMORANDUM ORDER

This civil action arises out of a business relationship gone bad between Plaintiff Stability Solutions, LLC, and Defendant Medacta USA, Inc. (Doc. No. 67.) Before the Court is Stability Solutions' motion (Doc. No. 79) under Federal Rule of Civil Procedure 56(d) to obtain certain discovery before responding in opposition to Medacta's pending motion for summary judgment (Doc. No. 74). Medacta has responded in opposition to Stability Solutions' discovery motion (Doc. No. 82) and Stability Solutions has filed a reply (Doc. No. 85). Considering the parties' arguments, and for the reasons explained below, the Court will grant Stability Solutions' motion and administratively terminate Medacta's summary judgment motion.

## I.    Relevant Background

### A.    Factual Background

Stability Solutions is a Wyoming limited liability company that sells and distributes medical devices in California. (Doc. No. 67.) Medacta is a Delaware corporation, based in Franklin, Tennessee, that manufactures implantable orthopedic medical devices and related instruments and products for joint replacements. (Doc. Nos. 67, 75-1.)

Medacta and Stability Solutions entered into a contractual agreement on April 1, 2021, giving Stability Solutions the right to sell and market certain Medacta products to hospitals, medical centers, and physicians in several California counties for an initial term of two years. (Doc. No. 75-1.) Among other provisions, the agreement states that Stability Solutions "shall be required to achieve a minimum dollar amount of Product sales ('Minimum Sales Volume') for each calendar year of the Term (or portion thereof) (each, a 'Sales Period')." (*Id.* at PageID# 466, ¶ 1.2.) Exhibit B to the agreement states that "[t]he Minimum Sales Volume for the first year of the Initial Term (i.e., the period commencing April 1, 2021 and ending March 31, 2022) shall be $2,000,000[.00] . . . ." (*Id.* at PageID# 483.) The agreement further provides that, "[f]or each subsequent Sales Period, Medacta will in good faith determine the applicable Minimum Sales Volume and will provide such Minimum Sales Volume to [Stability Solutions] in writing approximately thirty (30) days following the end of each Sales Period." (*Id.* at PageID# 466, ¶ 1.2.) The agreement states that Medacta reserves the right to "modify the Minimum Sales Volume in its sole discretion during a Sales Period in the event of previously unforeseen events or in accordance" with other sections of the agreement. (*Id.* at ¶ 1.2.1.)

Section 9.2 of the agreement lists circumstances under which Medacta may terminate the agreement early upon notice to Stability Solutions, including for failure to meet minimum sales volume requirements:

> Failure of [Stability Solutions] to meet (i) the applicable Minimum Sales Volume for any Sales Period or (ii) at least Seventy-Five percent (75%) of the applicable Minimum Sales Volume for any 2 consecutive Quarters of any Sales Period subject to the following opportunity to "cure" process: Medacta provides written notice advising [Stability Solutions] of the Minimum Sales Volume default. [Stability Solutions] must prepare a written improvement plan, detailing specific actions to cure said defaults. For the avoidance of doubt, the failure to present, in Medacta's sole judgment, an acceptable written improvement plan and/or failure to cure Minimum Sales Volume defaults after a notice period contained in an improvement

plan approved by Medacta, shall constitute defaults considered no longer curable by [Stability Solutions], and Medacta may terminate effective immediately[.]

(*Id.* at PageID#477, ¶ 9.2.5.)

The agreement also contains a choice-of-law provision stating: "This Agreement is made and shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Delaware, without regard to its conflicts of law principles." (*Id.* at PageID# 480, ¶ 13.13.)

There is no dispute that Stability Solutions did not meet the minimum sales volume requirement for the first year of the initial term. (Doc. Nos. 75-1, 80.) On April 1, 2022, Medacta and Stability Solutions executed an amendment to the agreement providing that "[t]he Minimum Sales Volume for the second year of the Initial Term (i.e. the period commencing April 1, 2022 and ending March 31, 2023) shall be $3,075,000[.00] . . . ." (Doc. No. 75-1, PageID# 485–86.) A few months later, on July 19, 2022, Medacta sent Stability Solutions a letter terminating the agreement effective July 22, 2022, based on Stability Solutions' failure to meet "the Minimum Sales Volume for the first year of the Initial Term (i.e., the period commencing April 1, 2021 and ending March 31, 2022)[.]" (*Id.* at PageID# 509.)

### B. Procedural History

Stability Solutions initiated this action by filing a complaint against Medacta in the Superior Court of California for San Francisco County alleging claims under California's Independent Sales Representatives Act, Cal. Civ. Code §§ 1738.10–1738.17, and under California common law for breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, quantum meruit, an accounting, and unfair business practices. (Doc. No. 1-1.) Medacta removed the case to federal court in the Northern District of California (Doc. No. 1) and moved to dismiss Stability Solutions' complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer venue to this Court under 28 U.S.C. § 1404(a)

(Doc. No. 5). The Northern District of California denied Medacta's request for dismissal and granted its request for transfer. (Doc. No. 21.)

Upon transfer to the Middle District of Tennessee, Medacta answered Stability Solutions' complaint (Doc. No. 28), and the Court entered an initial case management order setting deadlines to file motions to amend the pleadings, complete discovery, and file dispositive motions (Doc. No. 48). Medacta announced its intent to file a motion for summary judgment early in the litigation during the initial case management conference, and the Magistrate Judge ordered counsel to confer by April 26, 2023, regarding the scope of any discovery Stability Solutions might need to respond to Medacta's anticipated motion. (Doc. No. 48.) The Court ordered that, "[i]f the parties can reach agreement regarding the needed discovery, they shall prioritize that discovery and ensure that it is completed before the summary judgment motion is filed. If the parties do not agree, they may address their disagreement by appropriate motion." (*Id.* at PageID# 77.) No party filed a motion pursuant to the Court's order.

Two months later, Medacta filed a motion for summary judgment (Doc. No. 51) and a motion to stay discovery (Doc. No. 50) pending resolution of its summary judgment motion. Medacta argued that it was entitled to summary judgment because Delaware law, not California law, controls the parties' agreement and Stability Solutions' contractual theories of liability improperly relied on extrinsic parol evidence to modify the agreement's written terms. (Doc. No. 52.) Medacta argued that discovery should be stayed while the Court considered its motion because it is entitled to summary judgment "as a matter of law based on undisputed terms in the Agreement" and that Stability Solutions' "claims are all based on the hopeful discovery of parol evidence" that would not be admissible. (Doc. No. 50, PageID# 84–85.)

In response, Stability Solutions filed a motion under Federal Rule of Civil Procedure 15(a)(2) for leave to file an amended complaint (Doc. No. 57) and attached a proposed amended complaint (Doc. No. 57-1) incorporating additional allegations, claims of deceptive trade practices under Delaware law, claims of fraud and promissory estoppel, and a request for declaratory relief. Medacta opposed Stability Solutions' motion for leave to amend, arguing that Stability Solutions' proposed amendments were futile because they would not survive a motion for summary judgment. (Doc. No. 64.) The Court granted Stability Solutions' motion, finding that Medacta had misconstrued the applicable legal standard governing futility arguments under Rule 15(a)(2), and that Medacta's "factual and evidentiary arguments are more properly suited for resolution at summary judgment, after the parties have had an opportunity to engage in relevant discovery and fully brief all factual and legal arguments." (Doc. No. 66, PageID# 341.)

The amended complaint, which is now the operative pleading, alleges that "Medacta set unachievable quotas for [Stability Solutions] while providing assurances that they would not be enforced" (Doc. No. 67, PageID# 344. ¶ 3); undermined Stability Solutions' sales efforts during the initial term by "secretly meeting with" and hiring away two of Stability Solutions' independent-contractor sales representatives (*id.* at PageID# 348, ¶ 25); failed to provide Stability Solutions with written notice of its minimum sales volume default and an opportunity to cure the default as required by the parties' agreement (*id.* at PageID# 349, ¶ 29); and failed to pay Stability Solutions all earned commissions in accordance with the agreement (*id.* at PageID# 350, ¶ 32). Stability Solutions asserts statutory claims against Medacta under California's Independent Sales Representatives Act, Cal. Civ. Code §§ 1738.10–1738.17, California's unfair competition statute, Cal. Bus. & Prof. Code § 17200, and Delaware's deceptive trade practices statute, Del. Code Ann. tit. 6, § 2532. (Doc. No. 67.) Stability Solutions also asserts common law claims of breach of

contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, quantum meruit, fraud, and promissory estoppel, and requests an accounting, declaratory relief, injunctive relief, and damages. (*Id.*)

Medacta answered Stability Solutions' amended complaint (Doc. No. 69) and quickly filed an amended motion for summary judgment (Doc. No. 74) supported by a memorandum of law (Doc. No. 75), exhibits (Doc. No. 75-1), and a statement of undisputed material facts (Doc. No. 76). Medacta argues that Stability Solutions' contractual claims fail because Stability Solutions cannot rely on parol evidence to alter the plain meaning of the agreement's written terms and because Medacta did not breach the agreement. (Doc. No. 75.) It argues that Stability Solutions cannot seek relief under California law because the parties chose Delaware law to govern their agreement and that Stability Solutions' claim under Delaware's deceptive trade practices act fails because the parties "do not share a horizontal relationship" as required by that statute. (*Id.* at PageID# 458.) Medacta further argues that Stability Solutions' fraud claim fails because the factual allegations in Stability Solutions' amended complaint are inadequate and because Delaware law does not allow a party to use a fraud claim "to modify and then enforce a contract." (*Id.* at PageID# 453.) Medacta also argues that the existence of a valid contract bars Stability Solutions from pursuing its remaining non-contractual theories of liability. (Doc. No. 75.)

Stability Solutions filed a motion under Rule 56(d) asking the Court to order Medacta to participate in discovery before Stability Solutions is required to respond to Medacta's summary judgment motion. (Doc. No. 79.) Specifically, Stability Solutions asks the Court to terminate or stay Medacta's motion for summary judgment while ordering Medacta "to provide amended responses to [Stability Solutions'] Requests for Production of Documents Nos. 1–17 and Special Interrogatories Nos. 1–15 with objections removed" and "to allow depositions of" several Medacta

witnesses including Vice President of Sales Steve Kirschner, Chief Sales Operation Analyst Mike Emmerick, Area Director David Waters, Project Administrator Jacqueline Huber, and former Area Director Jim Shannon. (*Id.* at PageID# 627.) In support of its motion, Stability Solutions filed a memorandum of law (Doc. No. 80), an affidavit by its counsel of record (Doc. No. 81), copies of Stability Solutions' special interrogatories and requests for production (Doc. Nos. 81-1, 81-2), and copies of Medacta's answers and objections to those discovery requests (Doc. Nos. 81-3, 81-4). Stability Solutions states that, other than initial disclosures, Medacta "has only produced emails directly exchanged between Medacta and [Stability Solutions'] owner, Ash Shaalan" and that Medacta "object[ed] to almost all of [Stability Solutions'] special interrogatories and document requests, based on [its] unilateral determination that [Stability Solutions] does not need information to oppose summary judgment." (Doc. No. 80, PageID# 641.) Stability Solutions argues that the discovery requested in its Rule 56(d) motion is necessary "to assist [Stability Solutions] in raising genuine, triable issues of material fact at summary judgment" regarding its claims that, among other things, Medacta breached the parties' agreement first and that the minimum sales volume provisions in the agreement are unenforceable. (*Id.* at PageID# 635–36.)

Medacta opposes Stability Solutions' Rule 56(d) motion, arguing that Stability Solutions "fails to identify any discovery necessary to address the thirteen [ ] undisputed [m]aterial [f]acts outlined in Medacta's Amended Motion for Summary Judgment" and, instead, "requests the same extensive written discovery it previously filed[.]" (Doc. No. 82, PageID# 698.) Medacta further argues that "all of the requested discovery runs afoul of the parol evidence rule, which is the entire point of Medacta's [summary judgment] [m]otion." (*Id.* at PageID# 699.)

Stability Solutions replies that "Medacta does not control the universe of material facts relevant to summary judgment" and argues that, under Rule 56(d), it is entitled to "an opportunity

to identify [a]dditional [m]aterial [d]isputed [f]acts to defeat summary judgment." (Doc. No. 85, PageID# 717.)

II.      **Legal Standard**

Although Federal Rule of Civil Procedure 56(b) allows a party to "file a motion for summary judgment at any time until 30 days after the close of all discovery[,]" Fed. R. Civ. P. 56(b), "[i]t is well-established that the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)); *see also PSC Metals, Inc. v. S. Recycling, LLC*, Case No. 3:17-cv-01088, 2017 WL 4403360, at *2 (M.D. Tenn. Oct. 4, 2017) ("Summary judgment is premature until parties have a full opportunity to conduct discovery."). Rule 56(d) provides a mechanism for courts to give effect to this well-established principle. *Schrader v. Storage Five Clarksville, LLC*, No. 3:20-cv-00500, 2022 WL 71632, at *1 (M.D. Tenn. Jan. 6, 2022). Specifically, Rule 56(d) provides that where, as here, a party argues that additional discovery is necessary to respond to a pending motion for summary judgment, a court may "(1) defer considering the motion or deny it; (2) allow time to . . . take discovery; or (3) issue any other appropriate order" if the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d)(1)–(3).

"A party invoking [the] protections [of Rule 56(d)] must do so in good faith by affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him . . . to rebut the movant's showing of the absence of a genuine issue of fact." *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019) (alterations in original) (quoting *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014)). The affidavit or declaration must generally "indicate to the district court [the nonmoving party's] need for discovery, what material facts it hopes to

8

uncover, and why it has not previously discovered the information." *Unan v. Lyon*, 853 F.3d 279, 292–93 (6th Cir. 2017) (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)).

The Sixth Circuit has joined other circuits in holding "that '[a] . . . motion requesting time for additional discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'" *Doe*, 928 F.3d at 490–91 (alterations in original) (quoting *E.M.A. Nationwide, Inc.*, 767 F.3d at 623 n.7). The other factors courts consider in addressing Rule 56(d) motions, under the Sixth Circuit's opinion in *Plott v. General Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995), include:

> (1) when the plaintiff learned of the issue on which it seeks discovery; (2) whether the discovery sought would change the ruling; (3) the length of the discovery period; (4) whether the plaintiff has properly pursued any prior discovery; and (5) the responsiveness of the defendant to prior discovery requests.

*PSC Metals, Inc.*, 2017 WL 4403360, at *2; *see also Plott*, 71 F.3d at 1196–97; *Doe*, 928 F.3d at 491 (quoting *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008)).

The Sixth Circuit "'reviews a district court's decision on a Rule 56(d) motion for discovery for an abuse of discretion.'" *First Floor Living LLC v. City of Cleveland*, 83 F.4th 445, 453 (6th Cir. 2023) (quoting *Doe*, 928 F.3d at 486).

**III.      Analysis**

Stability Solutions has complied with Rule 56(d)'s procedural and substantive requirements, and the Court finds that the relevant factors weigh in favor of granting Stability Solutions' request for further discovery before it responds to Medacta's motion for summary judgment. Stability Solutions submitted an affidavit from its counsel of record (Doc. No. 81) and copies of Medacta's answers and objections to Stability Solutions' interrogatories and requests for production demonstrating that Stability Solutions has diligently pursued discovery in this action while Medacta generally has refused to respond to Stability Solutions' discovery requests on the

ground that "the requested information is not relevant" because "Medacta's Motion for Summary Judgment alleges the case should be decided on the Agreement" alone (Doc. Nos. 81-3, 81-4). The first, fourth, and fifth *Plott* factors—when the plaintiff learned of the issue, whether the plaintiff properly pursued prior discovery, and the defendant's responsiveness to prior discovery requests—therefore weigh in favor of granting Stability Solutions' motion. *See PSC Metals, Inc.*, 2017 WL 4403360, at *2; *Plott*, 71 F.3d at 1196–97. The third factor addressing the length of the discovery period also weighs in Stability Solutions' favor because Medacta moved for summary judgment (Doc. No. 51) with more than thirty weeks remaining in the discovery period provided by the Court's initial case management order (Doc. No. 48). *See PSC Metals, Inc.*, 2017 WL 4403360, at *2; *Plott*, 71 F.3d at 1196–97.

Medacta's central argument that discovery should not be permitted because "all of the requested discovery runs afoul of the parol evidence rule" and, thus, would not be admissible at trial is not well-founded. (Doc. No. 82, PageID# 699.) As a general matter, this argument puts the admissibility cart before the discoverability horse. Federal Rule of Civil Procedure 26(b)(1) provides that parties may generally "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" and that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Further, because the parol evidence rule only applies to contractual claims, its application has no bearing on discovery related to Stability Solutions' statutory claims. For example, Stability Solutions' amended complaint asserts that Medacta engaged in deceptive trade practices in violation of Delaware's deceptive trade practices statute, Del. Code Ann. tit. 6, § 2532. (Doc. No. 67.) Medacta's amended motion for summary judgment argues that "this statute is wholly

inapplicable" because it only applies when two businesses "'are direct competitors'" in a "horizontal relationship" and "[n]o such facts exist here" because "Stability was Medacta's distributor, not its equal." (Doc. No. 75, PageID# 458 (citation omitted).) But Stability Solutions argues in its Rule 56(d) motion that Medacta can be considered its direct competitor because "Medacta employs dozens of internal sales representatives . . . who directly 'sell' Medacta products to surgeons" and that Stability Solutions "needs discovery to prove this fact." (Doc. No. 80, PageID# 652.) Medacta has not responded to this argument. Because discovery on this issue may change the outcome of Stability Solutions' deceptive trade practices claim, the second *Plott* factor also weighs in favor of granting Stability Solutions' Rule 56(d) motion. *See PSC Metals, Inc.*, 2017 WL 4403360, at *2; *Plott*, 71 F.3d at 1196.

Stability Solutions has made the required showing under Rule 56(d) that it is entitled to an opportunity to conduct discovery before responding in opposition to Medacta's motion for summary judgment.

## IV. Conclusion

For these reasons, Stability Solutions' Rule 56(d) motion (Doc. No. 79) is GRANTED; Medacta's first amended motion for summary judgment (Doc. No. 74) is ADMINISTRATIVELY TERMINATED. The parties shall meet and confer regarding the scope and timing of additional discovery and be prepared to discuss that issue during the telephonic case management conference set on January 19, 2024.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge